IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COURTLAND WALKER | § | |
| | § | |
| V. | § | A-09-CV-894-LY |
| | § | |
| ALTA COLLEGES, INC., et al. | § | |

## ORDER

Before the Court are Plaintiff's Motion for Protective Order to Limit Scope of Discovery, filed April 5, 2010 (Clerk's Doc. No. 40); Plaintiff's Motion to Quash or Modify Subpoenas, filed April 5, 2010 (Clerk's Doc. No. 41); Defendants' Motion to Compel, filed April 16, 2010 (Clerk's Doc. No. 53); Defendants' Motion for Protective Order, filed June 9, 2010 (Clerk's Doc. No. 80); and the accompanying responses and replies.

The District Court has referred these motions to the undersigned Magistrate Judge for a determination pursuant to 28 U.S.C. §636(b), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

The Court held a hearing on the first group of these motions on April 30, 2010, and received supplemental briefing thereafter, from May 14, 2010, to May 25, 2010. On June 9, 2010, the Defendants' filed their own motion for protective order, and the last pleading on that motion was filed on June 29, 2010. The case is set for a pretrial conference before Judge Yeakel later today.

## I. BACKGROUND

This case involves claims that Defendants, collectively referred to as "Westwood," violated the Texas Education Code by failing to seek or obtain licensure before it enrolled Texas students in its online courses. Plaintiff Courtland Walker ("Walker") has filed a motion for class certification,

and the parties are currently conducting discovery related to the merits of this case and to the certification issue. Westwood has sent several discovery requests to Walker, and Walker believes that many of the requests are unrelated to the litigation pending in this Court, or are otherwise objectionable. In light of these objections, Walker has filed a motion for protective order and a motion to quash the subpoenas for the depositions of non-parties Jessica MacKenzie and Laurie MacKenzie. In regard to the motion for protective order, Walker requests that the Court enter an order prohibiting Westwood from inquiring into any matters relating to other cases currently pending involving Plaintiff's counsel and Westwood.[1] Additionally, Walker requests that the Court enter a protective order prohibiting Westwood's' counsel from inquiring into the nature and substance of the MacKenzies' relationship with Plaintiff's counsel during the MacKenzies' depositions. The MacKenzies' depositions are also subjects of Plaintiff's motion to quash.

Defendants, in turn, filed a motion to compel discovery responses, arguing that the discovery they seek is indeed related to the instant suit, particularly as it relates to the question of class certification and the adequacy of Plaintiff's counsel. The specific relief Defendants seek in their motion to compel is for the Court to order Plaintiff to: (1) promptly produce all non-privileged documents responsive to Defendants' Request for Production Nos. 1, 3, 9, 17–22, 30, 32, 34, and 43; (2) provide information responsive to Defendants' Interrogatories Nos. 1 and 2; and (3) provide responsive documents and information in response to all discovery requests whether such documents or information are in the physical possession of Courtland Walker, the James Hoyer firm, or Consumer Warning Network, Inc.

---

[1]There are currently two other pending matters involving Defendants and either the plaintiff or parties represented by Plaintiff's counsel. One is a class arbitration proceeding pending in Colorado, and the other is a state court case pending in Colorado.

Unfortunately, the discovery dispute does not end there, as Defendants have filed their own motion for protective order, in which Defendants argue that Plaintiff is now seeking discovery unrelated to the litigation pending in this Court. Additionally, Defendants believe that some of the discovery Plaintiff seeks is premature, as it only becomes relevant if and when a class gets certified.

Having reviewed all the materials submitted by the parties, and considering the arguments made at the hearing on the matter, the undersigned issues the following order.

## II. PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND DEFENDANTS' MOTION TO COMPEL

**A.     Standard**

Rule 26(c) of the Rules of Civil Procedure empowers a district court to issue an order to protect a party or witness from whom discovery is sought. FED. R. CIV. P. 26(c). "A party seeking a Rule 26(c) protective order prohibiting deposition testimony and document production must establish good cause and a specific need for protection." *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003) (citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)). The moving party carries the burden of establishing a need for the protective order, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Ferko*, 218 F.R.D. at 133 (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). If the movant meets his burden, the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." FED. R. CIV. P. 26(c). In deciding whether to grant a

motion for a protective order, the court has significant discretion. *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

**B.     Discussion**

In his motion for protective order, Plaintiff requests that the Court enter an order prohibiting Defendants from inquiring into any matters relating to the class arbitration or the claims raised in the Colorado state court action. Plaintiff also requests that the Court limit what Defendants may inquire into when deposing the MacKenzies, who are non-parties in this case. Rule 26(b)(2)(C) imposes an obligation on the Court to "limit the frequency or extent of discovery otherwise allowed by [the] rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C).

Much, if not most, of the discovery at issue in Plaintiff's motions and Defendants' motion to compel relates to the question of whether Plaintiff's counsel would be "adequate" under Rule 23 if the case were certified as a class action.[2] Defendants are seeking discovery that would tend to show Plaintiff's counsel are inadequate to serve as class counsel, and included in this is discovery related to how Plaintiff's counsel obtained an internal email from a former employee of Westwood. Westwood argues that if it discovers Plaintiff's counsel engaged in improper activities in obtaining this email, or in obtaining other internal Westwood documents, it would raise serious questions concerning the adequacy of Plaintiff's counsel.

---

[2]Some of the discovery may be relevant for reasons other than adequacy of Plaintiff's counsel. For instance, some documents may provide factual information regarding what was said by Westwood when speaking with students about its online program.

4

Generally speaking, the undersigned finds that the burden and expense of the discovery sought by Defendants, given the limited, non-merits based issue on which they are seeking it, outweighs its likely benefit, and should therefore be limited. Only in very limited circumstances would misconduct in obtaining evidence disqualify an attorney on adequacy grounds, and the costs of going down every possible rabbit trail in this regard is far outweighed by the likely probative value of what may be found. This is particularly true when such discovery will also implicate issues of documents or information protection by the work product doctrine, and what was said to and by Plaintiff's attorneys when investigating their case.

That is not to say the question of adequacy cannot be explored, but the information sought by Defendants can be—and here, has been—sought by far less intrusive or burdensome avenues, such as through interrogatories or requests for admission. *See* Exhibit B to Defendants' Supplemental Brief, Clerk's Doc. No. 75, at App. 40 (stating that the Plaintiff has responded to an interrogatory on how Plaintiff and his counsel obtained the email from the MacKenzies). Indeed, Defendants already have evidence of what they contend was Plaintiff's counsels' misconduct, and through this evidence they may raise the issue of adequacy. For example, in their most recent motion to modify the scheduling order (Clerk's Doc. No. 84, at 5), Defendants state that:

> Plaintiff's counsel James Hoyer is or may be inadequate, among other reasons, because it (i) has a conflict of interest arising out of its multiple claims against Defendants in various forums, (ii) has a conflict of interest arising out of its opposition to Westwood's application for regional accreditation, and (iii) appears to have violated multiple ethical rules of Texas, Colorado and/or other states in connection with its litigation against Westwood including, but not limited to, the unauthorized practice of law, inappropriate communications or contacts with current and/or former Westwood employees, and inappropriate use of social media and various websites in a manner that is misleading and/or designed to solicit potential clients.

Given this, and given how far afield discovery on adequacy may take the parties, the Court will grant Plaintiff's motion for a protective order in part, subject to the particular rulings on the matters raised in Defendants' motion to compel. In other words, the Court will not simply prohibit Defendants from inquiring into matters that Plaintiff deems irrelevant to this case. Rather, while keeping in mind the discussion above, the Court will address the specific discovery issues raised at the hearing and in Defendants' motion to compel to provide guidance on what will and what will not be allowed.[3] In regard to the protective order as it relates to the MacKenzies' depositions, the undersigned will address this issue separately below.

**C. Remaining matters raised in Defendants' motion to compel**

1) <u>Request for Production ("RFP") 3: "All recordings of conversations or communications between Westwood and you, your counsel, or any member of the Putative class."</u>

To the extent Plaintiff has any recordings of conversations or communications between Westwood and Plaintiff, or between Westwood and any member of the Putative class related to this case, these should be produced.[4] Plaintiff's view that the communications must somehow relate to school licensing is overly narrow, as Westwood's solicitation of Texas students would be relevant

---

[3]It is the Court's understanding that a few matters were resolved at the hearing, and therefore the undersigned will not address them here. First, Plaintiff agreed to provide responsive documents and information in response to all discovery requests (subject of course to what is protected by this order), whether such documents or information are in the physical possession of Courtland Walker, the James Hoyer law firm, or Consumer Warning Network, Inc. Next, regarding specific requests, Defendants agreed that RFP 1 was overbroad, so it was withdrawn, and Plaintiff stated there was nothing responsive to RFP's 18 and 19 that had not yet been turned over, and Defendants said they would accept that as true. Thus, the remaining items from Defendants' motion to compel that require a ruling are RFP's 3, 9, 17, 20–22, 30, 32, 34, and 43, and Interrogatories Nos. 1 and 2.

[4]This would include recordings of Westwood soliciting Texas students or engaging in any of the activities that Plaintiff alleges are prohibited under the Texas Education Code or the Texas Administrative Code.

to the claims in this case, and recorded communications between Westwood and Walker, or any other putative class member, are reasonably likely to be evidence of solicitation of students. *See infra* note 7.

> 2) <u>RFP 9: "All documents concerning the website http://www.westwood.edu, including but not limited to all screenshots or other records of older versions of the website or any of its pages."</u>

Plaintiff's position on this is that he (or his counsel) has some internal emails discussing the "disclaimers page" of the website, but these emails do not relate to licensing and therefore are not relevant to this case. The undersigned disagrees. As noted in footnote 7, the documents do not have to specifically relate to licensing to be relevant to this case. Plaintiff referred to the disclaimers in the complaint, so he presumably believed they were relevant, and it would appear that they are relevant to Westwood's solicitation of Texas students, or its policies regarding enrolling Texas students. Accordingly, these documents must be produced. As for any other documents concerning the website (such as screenshots), Plaintiff states that he has already produced them.

> 3) <u>RFP 17: "All documents concerning communications between you, your Counsel, or Consumer Warning Network and any current or former students, employees, officers, directors, representatives, or agents of Westwood."</u>

To the extent Plaintiff has not produced all documents concerning communications between Walker and Westwood personnel (current or former), these must be produced. Additionally, Plaintiff must produce all documents concerning communications between Walker and any current or former students related to Westwood's solicitation of Texas students for its online program.

As to communications between Plaintiff's counsel and Westwood personnel or Westwood students (current or former), the Court believes that the burden of producing these communications

outweighs the likely benefit of such discovery. Moreover, these documents may be privileged to the extent the request calls for counsels' work product.

Accordingly, the motion to compel as it relates to this request is granted in part, and Plaintiff must produce (1) all documents concerning communications between Walker and current or former Westwood personnel, and (2) all documents concerning communications between Walker and any current or former students related to Westwood's solicitation of Texas students for its online program.

> 4) <u>RFP 20</u>: "All documents concerning Exhibit F to the Demand for Class Action Arbitration in the Class Arbitration, including but not limited to documents concerning how and from whom you or your Counsel obtained that exhibit."

For the reasons stated in the discussion above, the undersigned will deny the motion to compel as it relates to this request.

> 5) <u>RFP 21</u>: "All documents generated by Westwood, including but not limited to Westwood internal documents (i.e., SMART notes, CRM notes, Contact Management Notes, Inside Track notes, Class program notes, etc.) and Westwood employee training and policy documents (i.e., Book of Knowledge, training presentations, script and interview guides used by admissions representatives, etc.)."

Plaintiff appears to have agreed to produce documents involving Walker, documents involving enrollment of Texas students at Westwood, and documents regarding licensing of Westwood to operate in Texas. If this is true, the motion to compel is moot. If it is not, then Plaintiff must produce any such documents. To the extent Defendants are seeking other documents wholly unrelated to this case for the sole purpose of pursuing their adequacy argument, the court's reasoning above applies equally here, and such documents need not be produced.

      6)      <u>RFP 22</u>: "All documents concerning information or stories concerning Westwood submitted by persons through any of the following websites:
              (a) http://westwoodscammed.me;
              (b) http://www.jameshoyer.com;
              (c) http://www.consumerwarningnetwork.com; or
              (d) Any other website operated, maintained, owned, or controlled by your Counsel."

The motion to compel as it relates to this request will be partially granted. To the extent documents relate to stories involving solicitation of Texas students, or Westwood engaging in other conduct that Plaintiff alleges to be wrongful in this case, they must be produced as they provide factual details of Westwood's alleged conduct.[5] Some communications *may* be privileged, such as those sent to www.jameshoyer.com,[6] but certainly this would not apply to the other websites mentioned in the request. To the extent the communications have no relation to the conduct of Westwood that Plaintiff alleges is wrongful in this case, they need not be produced.[7]

      7)      <u>RFP 30</u>: "All documents concerning communications with the State Bar of Texas concerning the authorization of John Allen Yanchunis to practice law in the state of Texas, any suspension of his authorization to practice law in the state of Texas, any request for reinstatement, and any request for a nonpracticing exemption."

The undersigned will deny the motion as it relates to this request. It appears that the issue Mr. Yanchunis had with the State Bar of Texas related to a relatively minor issue which led to a

---

[5]If this information only touched on the question of adequacy, the Court would not allow it, given the discussion above.

[6]This of course depends on the context in which they were sent.

[7]In the chart Plaintiff's counsel submitted to the Court at the hearing on this matter, Plaintiff's counsel states that they are producing only those documents "related to this case," which to them apparently means related to the issue of Westwood Online's licensing status in Texas. The Court finds this to be an overly narrow interpretation of what is "related to this case." If the documents relate to the solicitation of Texas students for Westwood's online program, or to any other conduct Plaintiff alleges to be wrongful in this case, then they "relate" to the case. This applies not only to this request, but to all of the discovery requests on which Plaintiff is taking this position.

suspension for the non-payment of fees, where the license in Texas was a secondary license to the primary license Mr. Yanchunis holds in Florida, and the Court will not permit wide ranging discovery on this matter unless Defendants make a greater showing of why it relates to the adequacy to serve as class counsel this case.

    8)    RFP 32: "All documents concerning communications between the TWC and you, your Counsel, or Consumer Warning Network concerning Westwood."

The motion to compel is denied as it relates to this request. Based on representations by Plaintiff's counsel, they have produced their communications with the TWC regarding Westwood Online. To the extent Defendants are seeking communications with the TWC regarding licensure of other schools, it is unclear how this would be relevant to this case, other than for adequacy purposes, and even as it relates to adequacy, the slight relevance does not justify discovery.

    9)    RFP 34: "All documents concerning communications between any media outlet (including but not limited to newspapers, magazines, television stations, radio stations, and websites) and you, your Counsel, or Consumer Warning Network concerning this Lawsuit or your allegations in the Lawsuit."

In regard to communications by the Plaintiff, Plaintiff's counsel states that these have been produced. Thus, the motion is moot as it relates to him. In regard to counsels' communications with the media, the slight probative value—which is not entirely clear as statements to the media by an attorney in a case would not be admissible—does not justify the burden of producing such documents. Accordingly, this request is denied.

    10)    RFP 43: "All communication between you, your Counsel, or Consumer Warning Network and any other person concerning the Lawsuit or the allegations of the Lawsuit."

Plaintiff's counsel states that no documents relating to Walker exist. In regard to communications from counsel, these documents are likely to be protected as work product, and the

request is not tailored to request non-protected material. As for communications by Consumer Warning Network concerning the lawsuit or its allegations, responsive documents should be produced.

> 11) <u>Interrogatory 1: "Describe how you or your Counsel obtained possession of Exhibit E to your Response to Defendants' Motion to Dismiss."</u>

Plaintiff asserts that it has responded to this interrogatory, and that no further response exists. The Court has to take counsel at their word, and cannot force them to respond further when there is nothing left to say. Accordingly, the motion is denied as it relates to this request.

> 12) <u>Interrogatory 2: "Identify each communication between you, your Counsel, or Consumer Warning Network and any former or current employee, agent or other representative of Westwood."</u>

This interrogatory is also aimed at attacking Plaintiff's counsels' adequacy by inquiring into communications they have had with other Westwood personnel, regardless of whether the communications have anything to do with the matter pending in this Court. For the reasons stated above, the Court will deny the motion as it relates to this request.

### III. MACKENZIE DEPOSITIONS

In regard to the deposition subpoenas issued on the MacKenzies, Plaintiff seeks overlapping relief. First, as part of his requested protective order, Plaintiff asks the Court to limit what topics Defendants may inquire into, such as prohibiting questions concerning the MacKenzies' discussions with the James Hoyer law firm, and prohibiting questions concerning any and all documents and correspondence exchanged between the MacKenzies and James Hoyer. Additionally, Plaintiff moves to quash the subpoenas, or, alternatively, to modify the subpoenas to limit their scope.[8]

---

[8] During the hearing, Defendants gave the impression that the sole purpose of the depositions was to inquire into the topics mentioned above, so granting the protective order would presumably

As noted above, the purpose of this discovery is to challenge class certification on adequacy grounds, and it is only a small portion of what Defendants claim make Plaintiff's counsel inadequate to act as class counsel. Plaintiff's counsel has already responded to interrogatories asking how it obtained Westwood documents, and at the hearing, counsel asserted that it did nothing improper in obtaining them. While Defendants understandably want to inquire into these matters with the MacKenzies, the undersigned finds that the slight chance that the information would be relevant does not justify the burden and expense of conducting additional discovery on these peripheral issues. Ultimately, much of what a court must decide in determining the scope of discovery that will be permitted in any given case is a balancing decision, where the court must balance the potential probative value of the requested materials against the cost and burden that would be incurred if the discovery is permitted. Here, that balance weighs against these depositions on issues peripheral to the merits of this dispute. This decisions is made easier by the fact that there is already a suit by Westwood against the MacKenzies pending in Colorado state court, where this issue is presumably "front and center," and Defendants will surely have the opportunity to depose the MacKenzies on these issues during discovery in that case.

Given these considerations, the Court will grant Plaintiff's motion for protective order as it relates to the MacKenzies' depositions. And because the sole purpose for the depositions was to inquire into these matters, the Court sees no reason why the depositions should go forward. Accordingly, the motion to quash the subpoenas for the depositions will also be granted.

---

eliminate the need to take the depositions.

## IV.  DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants have filed their own motion for protective order, as they believe that it is now the Plaintiff who is seeking discovery on matters that only pertain to the arbitration proceeding. Additionally, Defendants assert that some of the discovery sought by Plaintiff is premature given that the case has not yet been certified.  Each of these issues will be considered in turn.

### A.     Matters related to arbitration

Plaintiff has recently served several discovery requests on Defendants, including noticing the depositions of Mr. Hughes and Ms. Bisecka-Gomez, and Defendants want the Court to prohibit Plaintiff's counsel from seeking discovery on issues they feel are only related to the arbitration proceeding and have nothing to do with the issues in this case.  Specifically, Defendants want the Court to prohibit Plaintiff's counsel from questioning Mr. Hughes, Ms. Bisecka-Gomez, or any other witness about the following:

1)  Statements made to Mr. Walker or other prospective students regarding fees and costs, job placement opportunities and statistics, credit transferability, the value of the school's accreditation, or financial aid;

2)  Training regarding discussions with prospective students about fees and costs, job placement opportunities and statistics, credit transferability, the value of the school's accreditation, or financial aid;

3)  Policies or practices regarding financial aid;

4)  Hiring standards or compensation of admissions representatives or enrollment support specialists; or

5)  Other matters unrelated to the claims and defenses in this litigation.[9]

---

[9] Plaintiff does not oppose this request.  Of course, given the past history of the parties, it is doubtful that the parties see eye to eye on what is "related" to the claims and defenses in this litigation.  In any event, because there is no opposition to this request, the Court will not specifically address number 5.

Plaintiff's counsel state that they do not intend to delve into the first four topics at the requested depositions, but argue that these areas are indeed relevant to the case and could be explored during deposition, should they come up. According to Plaintiff, each of the four topics is relevant to proving (1) Defendants' knowing and intentional violation of Texas law or (2) damages. Plaintiff, therefore, objects to any order that would limit him from exploring these issues, should they arise.

The Court finds that Defendants' motion should be granted as it relates to these topics. First, the topics at issue appear to relate directly to the arbitration proceeding pending in Colorado, and Plaintiff has adamantly resisted discovery sought by Defendants in this case by arguing that Defendants are only trying to get discovery here that they could not get in the other case. This is a classic case of the principle that "what is good for the goose is good for the gander." Throughout discovery, Plaintiff has taken the position that he need not produce documents that do not directly relate to this case, and, as noted above, counsel has taken a very restrictive view on what is in fact related to this case. Given this, it seems entirely appropriate that Plaintiff should be similarly limited in the discovery he seeks.

Moreover, the undersigned is not persuaded by Plaintiff's relevancy argument. Plaintiff argues that the evidence is relevant to proving a "knowing" or "intentional" violation of law, contending that such evidence is relevant to their DTPA claim.[10] The flaw in this argument is that evidence that Westwood "knowingly" made false claims regarding such things as fees, costs, job

---

[10] Plaintiff contends that the Texas Deceptive Trade Practices Act makes a violation of the particular Texas Administrative Code provision implicated by the Plaintiff's licensure claim also a violation of the DTPA itself. He contends, therefore, that evidence of a "knowing" violation of the TAC provision is relevant to his treble damages request under the DTPA.

placement opportunities and statistics, credit transferability, or the value of the school's accreditation would have nothing to do with whether Westwood "knowingly" enrolled students without the proper Texas license. Whether Defendants knew it did not have the appropriate license when it solicited students is not answered by delving into any of the topics at issue, and thus Plaintiff's argument that these matters are relevant to demonstrate "knowing" conduct by Westwood lacks merit.

**B.      Discovery of putative class members' identities and purported damages**

Plaintiff has also served discovery on Defendants and on two non-parties[11] seeking personal information on putative class members, including names, contact information, identification numbers, detailed information about each student's financial aid, and other personally identifiable financial information. Defendants seek an order stating that Plaintiff is not entitled to such discovery at this time because the information is not relevant unless and until a class is certified.

Plaintiff concedes that the putative class members' personally identifiable information (i.e. names, contact information, and street address) is not yet relevant to the case, but he argues that students' financial aid details are relevant to proving Defendants' damages exposure. While this statement is perhaps true—financial aid details may be relevant to proving Defendants' damages—this would only be relevant if and when a class is certified. If the class certification motion is denied, then there would be no need to conduct discovery on any of the putative class members, as there would be no class. All effort and expense would then be completely wasted.

---

[11]In regard to the subpoenas served on non-parties, Plaintiff argues that the motion is procedurally improper, as only the issuing court can quash a subpoena, and this Court did not issue the subpoenas in question. However, as Defendants note in their reply, a court may issue a protective order to limit the scope of discovery that the parties may undertake in litigation pending in that court. Thus, the fact that the subpoena was issued from another court does not prohibit this Court from issuing a protective order related to it.

Because this discovery does not go to the question of whether a class can be certified, the Court finds that it should be postponed until the motion to certify is granted.[12]

To be clear, the protective order as it relates to this discovery (i.e. that related to the putative class members' identities and purported damages) will only apply until the class certification motion is ruled upon. In the event that the motion is granted, discovery on putative class members may go forward, including that served on the non-parties.

## V.  CONCLUSION

In light of the forgoing, Plaintiff's Motion for Protective Order to Limit Scope of Discovery (Clerk's Doc. No. 40) is **GRANTED IN PART**, as detailed above; Plaintiff's Motion to Quash Subpoenas for the Depositions of Jessica MacKenzie and Laurie MacKenzie (Clerk's Doc. No. 41) is **GRANTED**; Defendants' Motion to Compel (Clerk's Doc. No. 53) is **GRANTED IN PART**, as detailed above; and Defendants' Motion for Protective Order (Clerk's Doc. No. 80) is **GRANTED**. To the extent any relief requested in any of the parties' discovery motions has not been explicitly granted herein, it is **DENIED**.

SIGNED this 6th day of July, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[12]On June 29, 2010, Westwood moved to bifurcate discovery in this case. *See* Clerk's Doc. No. 84 (this request is made in the motion to modify the scheduling order). Obviously, the district judge's ruling on that issue could impact this ruling.