# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COURTLAND WALKER, an individual; on behalf of himself and all others similarly situated, | § § § § § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 1:09-cv-894 |
| ALTA COLLEGES, Inc., a Delaware Corporation, WESTWOOD COLLEGE, Inc., a Colorado Corporation, TRAV CORPORATION, A Colorado Corporation f/d/b/a Westwood College Online, and WESGRAY CORPORATION, d/b/a Westwood College Online, | § § § § § § § § § § | |
| Defendants. | § § § | |

## DECLARATION OF LINDA S. MULLENIX

I, Linda S. Mullenix, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a tenured Professor of Law at the University of Texas School of Law, 727 East Dean Keeton Street, Austin, Texas 78705, where I hold the Morris and Rita Atlas Chair in Advocacy. From 1991-2001 I was the Bernard J. Ward Centennial Professor of Law at the University of Texas School of Law.

2.      I submit this Declaration in connection with the action entitled *Courtland Walker, et al. v. Alta Colleges, Inc., et al.*, in the United States District Court for the Western District of Texas, Austin Division, Civil Action No. 1:09-cv-894. I have been asked by counsel for the Plaintiff Walker ("Walker") to review the pleadings and other material in this litigation, and to offer guidance relating to the issues of the adequacy of proposed class counsel in this litigation.

1

3.     Defendants have raised a number of issues bearing on the adequacy of proposed class counsel, which I discuss below. Based on the materials furnished to me and my knowledge of class action practice and procedure, proposed class counsel satisfy the standards to represent the proposed class. The Defendants' alleged challenges to the adequacy of class counsel are not of a quality or nature to support a finding of lack of adequacy of proposed class counsel. In addition, proposed class counsel satisfy the requirements for appointment as class counsel in this matter, pursuant to Fed. R. Civ. P. 23(g).

4.     In preparing this Declaration, I have reviewed the pleadings and discovery materials produced by the parties. I also have reviewed class certification decisions discussing the adequacy of counsel requirement in federal court, as well as other standard class action treatises. These materials are listed as Exhibit A to this Declaration.

5.     The opinions set forth in this Declaration are subject to supplementation or amendment, based on the development of subsequent information unavailable as of the time of this Declaration.

## I.     Professional Background

6.     I have been a law professor since 1981. Currently I am a law professor at the University of Texas School of Law, where I hold an endowed Chair. Over the course of my academic career, I have been a visiting professor at Harvard Law School, the University of Michigan Law School, Southern Methodist University Law School, the University of Tennessee Law School, and Villanova University Law School, where I was appointed to the Harold Gill Reuschlein Distinguished Visiting Chair. I earned Masters and Ph. D degrees in political science at Columbia University and a law degree at Georgetown University. Between 1974 - 1980 I taught political science at universities in New York City and Washington D.C. A copy of my

2

curriculum vitae, which contains detailed information about my qualifications, is attached as Exhibit B.

7.      During 2002 I was a scholar-in-residence at the Rockefeller Foundation Bellagio Study and Conference Center in Bellagio, Italy. During spring 2007 I held the Fulbright Senior Distinguished Chair in Law, in Trento, Italy. I pursued research projects related to class litigation and settlements during these appointments.

8.      I am admitted to practice law in several state and federal courts, including the District of Columbia Bar, the State Bar of Texas, the Federal District Court for the District of Columbia, and the United States Court of Appeals for the District of Columbia, the United States Court of Appeals for the Fifth Circuit, and the United States Supreme Court.

9.      I teach federal civil procedure, mass tort litigation, and various seminars related to class action procedure. In the past I have taught complex litigation, federal courts, conflicts of law, professional responsibility, and civil justice reform. My course in mass tort litigation includes extensive coverage of the various means for the aggregate resolution of mass tort claims, including the possibility of class certification of such aggregate claims.

10.     I have extensive experience in class action and complex litigation. I served as the Reporter to an American Bar Association, Tort and Insurance Practice Section Task Force on Class Actions, between 1995 – 97. In this capacity I wrote the Task Force Report concerning proposed amendments to the federal class action Rule 23. During 1989-90 I served as a Judicial Fellow at the Federal Judicial Center in Washington, D.C., where I conducted an empirical study of two asbestos class action litigations, *Cimino v. Raymark* (Eastern District of Texas) and the *School Asbestos Litigation* (Eastern District of Pennsylvania). As a consequence of this study, I

3

published *Beyond Consolidation: Post-Aggregative Procedure in Asbestos Mass Tort Litigation*, 32 Wm. & Mary L. Rev. 475 (1991).

11.     I have been a speaker at numerous federal, state and local bar programs, including the American Bar Association National Institute for Class Actions, and academic symposia relating to class action and other complex litigation. A complete listing of these programs is included on my curriculum vitae (Exhibit B). In addition, I have participated, as an invited guest or conferee, in numerous professional conferences that have involved extensive consideration of class action and other complex litigation.

12.     I have published ten books. Several primarily concern complex and class action litigation.  Specifically, I have authored, co-authored, or edited:

- *State Class Actions: Practice and Procedure* (CCH 2000) (2 vol. treatise with annual updates) that provides a comprehensive analysis of class action practice in each of the fifty states and the District of Columbia;

- *Understanding Federal Courts* (Lexis-Nexis 1998, with Profs. Martin Redish and Georgine Vairo) that deals with all aspects of federal court jurisdiction, justiciability, applicable law and the relationship of federal and state court systems;

- *Mass Tort Litigation* (Thomson West 2d ed., 2008) that contains substantial materials on various aggregate means for resolving mass tort litigation, including consolidation, multidistrict litigation, class actions, alternative dispute resolution mechanisms, and bankruptcy;

- *Federal Courts in the Twenty-First Century* (Lexis-Nexis 3d ed. 2007; with Profs. Fink, Rowe, and Tushnet) to which I contributed all the materials on complex litigation and class actions;

- Vol. 17A *Moore's Federal Practice* (2d and 3d eds. and annual updates) to which I contributed all chapters relating to issues involved with intersystem litigation (*e.g.*, abstention doctrines; Anti-Injunction Act; Eleventh Amendment sovereign immunity; *Erie* doctrine).

- *Leading Cases in Civil Procedure* (Thomson West 2010).

4

13.    I have published over sixty law review articles focused on federal practice and procedure, many relating to class action litigation. In addition, I have published in excess of eighty articles of general commentary relating to federal practice and procedure, including a regular bi-monthly column for the *National Law Journal* on class action practice. All these articles are listed in my attached curriculum vitae (Exhibit B).

14.    My articles have been cited by various courts including the United States Supreme Court; the United States Courts of Appeals for the First, Third, Fourth, Fifth, Seventh, and Eighth Judicial Circuits; federal district courts for the Middle District of Alabama, Northern District of Georgia, the District of Massachusetts, the District of Minnesota, the Western District of Missouri, the District of New Mexico, the Eastern and Southern Districts of New York, the Eastern District of Pennsylvania, the District of South Carolina, and the United States Bankruptcy Court for the Eastern District of Michigan. In addition, I have been cited by the Supreme Courts of Louisiana, Minnesota, Mississippi, Oregon, Texas, Vermont, West Virginia, and Wisconsin; and appellate courts in Missouri and Texas. I have appeared as a radio commentator on National Public Radio, discussing class action litigation. The *New York Times*, the *Wall Street Journal*, the *National Law Journal*, and other national and local media publications have frequently quoted me as an expert on complex litigation and class action litigation.

## Consulting Experience

15.    I have consulted with plaintiffs, defense, and objectors' counsel in numerous federal and state complex litigations, serving as a consulting attorney, expert witness, or appellate counsel. A list of cases in which I have given testimony during the last four years is included as Exhibit C. My consulting work generally has related to issues concerning

5

aggregative procedure, consolidation, MDL practice, class certification, choice of law, settlement, and other class action issues, including pleadings, motions, financing, notice, and attorney fees. In many actions I have testified by affidavit, declaration, expert report, deposition, or in-court proceedings. I also have worked on appellate litigation relating to complex and class action litigation, and have authored amicus briefs. My class action experience includes litigation involving mass tort, small claims consumer actions, securities, employment discrimination claims, insurance litigation, and oil and gas claims.

16.     My consulting work spanning more than a decade has included prominent federal and state class action cases, including the reported cases of *Cimino v. Raymark, Georgine v. Amchem, Ahearn v. Fibreboard, In the Matter of Rhone-Poulenc, Castano v. American Tobacco Co., Bolin v. Sears Roebuck, In the Matter of Bridgestone/Firestone, Inc., Falise v. American Tobacco Co.,* the *Simon II* litigation, *In re Mexican Money Transfer Litigation, Hayden v. Atochem,* and the Alabama *MDL 1130 "Non-Filing Insurance" Fee Litigation.* I have been involved with state class actions in Arkansas, California, Colorado, Delaware, Florida, Illinois, Indiana, Louisiana, Maryland, Missouri, New Mexico, New Jersey, New York, Ohio, Oklahoma, Oregon, Texas, Utah, and Washington. In addition, I have worked on Canadian class actions in Ontario and British Columbia, class action litigation under the Brazilian Consumer Protection Act, a London arbitration relating to settlement of mass tort claims, and have been an adviser regarding proposed Swedish and Finnish class action legislation. My expert reports, affidavits, declarations, and testimony relating to class certification issues have been admitted into evidence in numerous proceedings in state and federal court. I have been qualified as a testifying class action expert in well over twenty-five class action proceedings. I have been cited for my expert

6

opinions in *Samuelson v. United Health Care of Texas, Inc.*, 79 S.W.3d 706 (Tex. App. – Ft. Worth 2002).

17.     As a consequence of my teaching, scholarship, and practice, I am thoroughly familiar with the requirements of class action litigation in federal and state courts.

18.     I am being compensated in this matter at the rate of $500.00 per hour.

## II.     The Proposed Texas *Walker* Class Action

19.     The Plaintiff Courtland Walker ("Plaintiff") has sued Alta Colleges, Inc., Westwood College, and other defendants ("Defendants") in this Court on behalf of a putative class of thousands of Texas students enrolled in Westwood College Online. The Plaintiff contends that Westwood College uses unregistered representatives to solicit, consult with, and enroll students in distance education programs that are not granted certificates of approval by the Texas Workforce Commission. (Plaintiff's First Amended Complaint at ¶¶ 12 – 23). On January 25, 2010, the Plaintiff filed a Motion for Class Certification.

20.     The Plaintiff has alleged violations of the Texas Education Code (Plaintiff's First Amended Petition at ¶¶ 46 – 56), the Texas Business and Commerce Code, as well as of the Texas Administrative Code (Plaintiff's First Amended Petition at ¶¶ 57 – 65).

21.     The Plaintiff seeks certification of a class of Texas residents, and damages, injunctive and declaratory relief on behalf of the class. (Plaintiff's First Amended Petition, Prayer for Relief at 17 – 18).

## III.     Standards for Adequacy of Class Counsel

22.     In order to certify a federal class action, the proponents must satisfy the requirements of Fed. R. Civ. P. 23(a) and (b). Rule 23(a) requires (1) that a proposed class be sufficiently numerous, (b) share common questions of law or fact, (3) that the plaintiff's claims

7

are typical of the class as a whole, and (4) that the named plaintiff will adequately represent the entire class. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH at § 21.13 (Federal Judicial Center 2004)("MANUAL FOR COMPLEX LITIGATION").

23.     From 1966 through 2003, federal courts determined that the Rule 23(a)(4) adequacy requirement included two separate elements: the adequacy of the class representative, and the independent adequacy of proposed class counsel.   In assessing these two separate requirements, federal courts developed a common law body of case law to evaluate the adequacy of class counsel.

24.     With regard to the adequacy of class counsel, federal courts focused on three requirements: (1) that proposed class counsel have demonstrated expertise in class action litigation or the substantive law underlying the class allegations, (2) that proposed class counsel have sufficient resources to prosecute a class action, and (3) that class counsel was free of any conflicts of interest with the class it proposed to represent. *See e.g., Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394 (N.D. Ill. 1987). *See also* Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7A FEDERAL PRACTICE AND PROCEDURE § 1769.1 ("the class attorney must be 'qualified, experienced, and generally able to conduct the proposed litigation.' In sum, the lawyer must be willing and able to vigorously prosecute the action.").

25.     In 2003, Rule 23 was amended to add new subsection (g), which now governs the appointment of class counsel. Wright, Miller & Kane, *id.* In addition, Rule 23(c)(1)(B) indicates that a class certification decision and order requires judicial appointment of counsel for the class under the standards of Rule 23(g). MANUAL FOR COMPLEX LITIGATION at § 21.27.

26.     With the addition of Rule 23(g) to the class action rule, the adequacy of class counsel is now evaluated under the standards set forth in that provision, rather than under Rule

8

23(a)(4). Rule 23(a)(4) now applies to determine the adequacy of the class representative, only. However, in promulgating new Rule 23(g), the Advisory Committee on Civil Rules recognized that the new provision was based on past experience in evaluating adequacy of class counsel as developed as a matter of common law under Rule 23(a)(4).[1] Hence, past common law decisions evaluating adequacy of class counsel, pursuant to Rule 23(a)(4), still have relevancy for assessing the adequacy of proposed class counsel under subdivision Rule 23(g)(1)(C).[2]

27.    Rule 23(g)(1)(C) sets out the criteria for appointment of class counsel. As the

MANUAL FOR COMPLEX LITIGATION suggests, in appointing class counsel a judge must:

> "inquire into the work counsel has done in investigating and identifying the particular case; counsel's experience on handling class actions, other complex litigation, and claims of the type asserted in the action; counsel's knowledge of the applicable law; the resources counsel will commit to representing the class; and any other factors that bear on the attorney's ability to represent the class fairly and adequately. This last category may include the ability to coordinate the litigation with other state and federal class and individual actions involving the same matter. Those seeking appointment as class counsel must identify related litigation in which they are participating. It is important for the judge to ensure that counsel does not have a conflict with class interests."

---

[1] The 2003 Advisory Committee Note to new subdivision (g) states: "Subdivision (g) is new. It responds to the reality that the selection and activity of class counsel are often critically important to the successful handling of a class action. Until now, courts have scrutinized proposed class counsel as well as the class representative under Rule 23(a)(4). This experience has recognized the importance of judicial evaluation of the proposed lawyer for the class, and this new subdivision builds on that experience rather than introducing an entirely new element into the class certification process. Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while this subdivision will guide the court in assessing proposed class counsel as part of the certification decision. This subdivision recognizes the importance of class counsel, states the obligation to represent the interests of the class, and provides a framework for selection of class counsel. The procedure and standards for appointment vary depending on whether there are multiple applicants to be class counsel. The new subdivision also provides a method by which the court may make directions from the outset about the potential fee award to class counsel in the event the action is successful."

[2] 7A Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 1769.1.

9

## IV. Challenges to Adequacy of Class Counsel, Generally

28.    Courts rarely, if ever, have sustained challenges to the adequacy of class counsel under Rule 23(a)(4).[3] In an empirical study of adequacy challenges to class counsel, which study encompassed a ten-year sample of court decisions, courts found only 31 counsel inadequate to represent a class, out of 687 cases with a ruling on adequacy of class counsel.[4]

29.    In virtually all cases (prior to 2003) in which class counsel have been found to be inadequate, class counsel's conduct has involved egregious patterns of disregard for court orders in the ongoing litigation;[5] failure to diligently prosecute the action, including timely filing of amending pleadings, class certification, and other motions practice;[6] failure to join responsible parties as defendants;[7] failure to adequately research the legal issues and construct appropriate pleadings;[8] failure to conduct or to comply with discovery orders;[9] failure to or delay in

---

[3] *See* Robert H. Klonoff, *The Judiciary's Flawed Application of Rule 23's "Adequacy of Representation" Requirement*, 2004 Mich. St. L. Rev. 671 (2004).

[4] *Id.*

[5] *Dubin v. Miller*, 132 F.R.D. 269 (D. Colo. 1990)(counsel failed to respond to judge's order for over three months; counsel failed to heed judge's admonition to expedite proceedings).

[6] *Id.*; *see also McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981)(counsel failed to file timely motion for class certification or to conduct discovery for more than two years demonstrated lack of competence).

[7] *Dubin, supra.*

[8] *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995)(counsel inadequate for failure to research issues adequately and to construct thoughtful pleadings).

[9] *Taub v. Glickman*, 1970 WL 210 at * 2-3 (S.D.N.Y. Dec. 1, 1970)(lack of adequacy of counsel for failure to answer docket call and to pursue Rule 34 discovery requests). *See also Kingsepp v. Wesleyan University*, 1992 WL 230136 at *2 (S.D.N.Y. Sept. 3, 1992)(failure to comply with court's discovery orders; failure to obey judge's orders; failure to honor settlement agreement; failure to adhere to filing requirements; filing of frivolous motions)(cited by Defendants in this litigation in Reply in Support of Defendants' Supplemental Brief on Discovery Issues).

providing notice to the class;[10] failure to present expert witness testimony in a comprehensible manner;[11] and generally a "lackluster performance in the current case."[12]

30.     In contrast, courts generally have been unwilling to find otherwise competent and experienced counsel inadequate based on alleged violations of court rules or ethical lapses. For example, a federal court declined to find class counsel inadequate because the class attorney violated a local court rule that required the filing of written contingent fee agreements.[13] In another case where defendants challenged the adequacy of class counsel based on past conduct and alleged ethical violations, the court held that unless ethical lapses were so egregious as to compromise the interests of the class or to waste court time, then otherwise capable and experienced attorneys may represent the class.[14]

---

[10] *Dubin, supra.*

[11] *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986)(counsel inadequate for failure to present expert witness testimony in understandable way).

[12] *Id.*

[13] *Kreindler v. Chem. Waste Mgmt., Inc.*, 877 F. Supp. 1140, 1160 (N.D. Ill. 1995).

[14] *Picard Chem. Inc. Profit Sharing Plan v. Perrico*, 1996 WL 739170, at *6 9W.D. Mich. Sept. 27, 1996). The court stated:

> To satisfy the standard for adequacy, "counsel for the plaintiff class must be 'qualified, experienced and generally able to conduct the proposed litigation.'" *Ballan,* 159 F.R.D. at 487 (quoting *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968)). In making its determination as to adequacy of representation, this Court will place greater weight on the conduct of plaintiffs' counsel in the instant case, rather than their reputation or performance on behalf of classes in other cases. *See Ballan,* 159 F.R.D. at 487 (competence with present performance demonstrates adequacy of counsel in class actions). The reputation and past performance of plaintiff's counsel, however, is probative evidence of their experience and ability to represent the class in the instant case. *Gomez v. Illinois State Bd. of Educ.,* 117 F.R.D. 394, 401 (N.D. Ill. 1987).
>
> This Court holds that plaintiffs' counsel are clearly experienced and capable attorneys. In light of these important facts, this Court would not find plaintiffs' counsel inadequate to represent the class due to their alleged ethical transgressions unless they have engaged in conduct so egregious that either the substantive interests of the class have been compromised, the Court's time and resources have been unduly wasted, or the defendants' interests have been prejudiced. This Court has yet to penalize plaintiffs' counsel for allegedly improper behavior in the instant suit. (*See* Court's Order of July 25, 1996, denying motions for Rule 11 sanctions and for undertaking of costs.) As a result,

11

31. Virtually all federal courts assessing the adequacy of class counsel do so based on conduct of counsel in the ongoing class litigation, but do not consider alleged conduct that has not yet resulted in any penalty or sanction being imposed upon class counsel.[15] Hence, mere allegations of substantive or ethical violations, in absence of a sanction, penalty, judgment, or conviction, are insufficient to support a finding of lack of adequacy of class counsel.

32. Defendants in this action understand that only patterns of repeated and egregious litigation misconduct by class counsel — in past and ongoing class litigation — will give rise to a lack of adequacy on the part of class counsel. Thus, Defendants in their discovery requests cite to *Kingsepp v. Wesleyan University*,[16] where the Court held class counsel to be inadequate for failing, *inter alia*, to obey a judge's orders, heed a judge's instructions, honor a settlement agreement, comply with discovery orders, and adhere to filing requirements. In addition, the *Kinsepp* Court found counsel inadequate to represent the class for filing frivolous motions, as well as pleadings and memoranda that recited conclusory statements of the Rule 23 requirements.

33. Defendants in their discovery requests also rely on *Ploog v. Homeside Lending, Inc.*[17] for the proposition that a Rule 23(a)(4) adequacy inquiry "involves an examination of counsel's competence and experience as well as counsel's adherence to ethical rules."[18] However, Defendants fail to acknowledge that the Court in *Ploog* actually found no basis for holding the Plaintiff's class counsel inadequate, and made no finding of any lack of counsel's adherence to ethical rules.

---

this Court holds that the conduct of plaintiffs' counsel does not merit a finding that they are inadequate.

[15] *Id.*
[16] *See* n. 9, *supra.*
[17] 2001 WL 987889 at *13 (N.D. Ill. Aug. 28, 2001).
[18] *Id.*

34.     Indeed, in that case the defendant's challenge to adequacy was based on a

message posted by Ploog's counsel on an Internet board, *The Complaint Station*. The defendant

alleged that this was an attempt to solicit prospective clients, in violation of Illinois Rule of

Professional Conduct 7.3. The court rejected this argument:

> The argument is untenable for an important reason: The message cannot reasonably be
> construed as a solicitation of business. Significantly, by the time the message was posted,
> well after Ploog filed her complaint, Ploog's counsel already had Ploog, the only client
> the law firm needed. This fact, coupled with the content of the message, demonstrates
> that, rather than an attempt to generate business, the Internet message was an attempt to
> generate facts, in the same way that an attorney hits the streets looking for witnesses after
> a client complains of injury. Instead of demonstrating bad character, Ploog's counsel's
> conduct demonstrates competent representation. Overall, we find no basis for holding
> Ploog's counsel inadequate.[19]

35.     With the promulgation of Rule 23(g)(1)(C) in 2003, federal courts now look to

four factors to be considered in appointing class counsel, informed by the common law of

adequacy developed under Rule 23(a)(4).[20] These four factors are:

- The work counsel has done in identifying or investigating potential claims in
  the action;

- Counsel's experience in handling class actions, other complex litigation, and
  claims of the type asserted in the action;

- Counsel's knowledge of the applicable law;

- The resources counsel will commit to representing the class.

36.     In construing adequacy of class counsel under Rule 23(g), one federal circuit has

indicated that "Not every mistake by counsel, however, inexorably prejudices class interests."[21]

Moreover, that court has recognized that the proper remedy for misconduct by counsel normally

---

[19] *Id.*

[20] *See e.g, Sheinberg v. Sorenson*, 606 F.3d 130 (3d Cir. 2010)(enumerating the requirements for
appointment of class counsel under Rule 23(g)).

[21] *Id.*, 606 F.3d at 134, citing *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 442 (W.D.
Wis. 2008).

is disciplinary action against the lawyer and remedial notice to class members.[22]  Since 2003, courts in this Circuit have found proposed class counsel adequate pursuant to both Rule 23(a)(4) common law standards, as well as Rule 23(g) requirements.[23]

## V.   Defendants' Challenges to Adequacy of Class Counsel in Proposed *Walker* Action

37.   Through Defendants' various discovery requests, Defendants have suggested five basic challenges to the adequacy of counsel to represent the proposed *Walker* class.

38.   The Defendants suggest that proposed counsel are inadequate because (1) Plaintiff's attorneys allegedly obtained confidential information from current and former employees of the Defendants, and (2) Mr. Yanchunis of the Hoyer law firm engaged in the authorized practice of law.  In addition, Defendants allege that class counsel have conflicts of interest with the class, based on: (3) the overlapping, multiple, and inconsistent theories in Texas and Colorado litigation, (4) the existence of a defamation suit against the Plaintiff's attorneys by the Defendants, and (5) the Plaintiff's attorneys' use of internet forums to solicit complaints against the Defendants and "campaign" against the Defendant Westwood's effort to obtain regional accreditation.

39.   None of these challenges rises to the level of disqualifying the Hoyer law firm or its attorneys from representing the class, for lack of adequacy. To begin, none of the Defendants' allegations or challenges has resulted in the sanctioning, censure, penalties, or judgments against

---

[22] *Id.*, citing *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 932 (7th Cir. 1972).

[23] *See e.g. Eatmon v. Palisades Collection, LLC,* 2010 WL 1189571 at * 7 (E.D. Texas March 5, 2010); *J.D., L.E., and R.A. v. C. Ray Nagin*, 255 F.R.D. 406, 415-17 (E.D. La. 2009); *City of San Antonio v. Hotels.com*, 2008 WL 2486043 at *8 (W.D. Texas May 27, 2008); *Boos v. AT & T, Inc.*, 252 F.R.D. 319, 323 (W.D. Tex. 2008); *In re OCA, Inc., Securities and Derivatives Litig.*, 2008 WL 4681369 at * 8-9 (E.D. La. 2008); *Barrie v. Intervoice-Brite, Inc.*, 2006 WL 2792199 at * 4 (N.D. Tex. Sept. 26, 2006)(certification order vacated on other grounds not including lack of adequacy); *In re Electronics Data Systems Corp. Securities Litig.*, 226 F.R.D. 559, 566-570 (E.D. Tex. 2005).

14

the Hoyer law firm or of its attorneys under rules, statutes, or Codes of Professional
Responsibility of any state or federal jurisdiction. No attorney in this litigation has been
sanctioned or disciplined by any governing body overseeing attorney conduct, as to raise
questions concerning the expertise or competency of counsel to represent the class.

40.     In addition, none of the conduct that the Defendants complain of remotely
resembles the type of litigation misconduct that has resulted in a judicial finding of lack of
adequacy in the very few cases in which courts have found proposed class counsel to be
inadequate. Moreover, none of the conduct complained of embraces an actual conflict of interest
that might render class counsel inadequate to represent the class.

## Defendants' Third-Party Claims and Allegations of Unauthorized Practice of Law

41.     Defendants suggest that class counsel are inadequate because they have obtained
information from the Defendants' current and former employees, in violation of contractual
obligations and the attorneys' ethical duties. In addition, Defendants allege that the solicitation
and receipt of such information constitutes a tortious violation of state law, as well as improper
*ex parte* contacts with corporate employees.

42.     However, the Defendants have not pursued these allegations with any State bar
disciplinary committee, nor have the Defendants pursued these allegations in litigation based on
claims of third-party breach of contract or tort. In absence of actual litigation, judicial judgment,
bar disciplinary action, or resulting sanctions, the mere allegation of such improprieties cannot
sustain a finding of inadequacy of these attorneys to serve the interests of the *Walker* class.[24] At
this point, whether Plaintiff's attorneys have violated any contractual, tortious, or professional

---

[24] Contrary to Defendants' assertion that such conduct supports a finding of counsel inadequacy,
citing *Carpenters Health & Welfare Fund v. The Coca-Cola Company*, 1:00-CV-2838-WBH,
slip op. at 49-69 9N.D. Ga. Feb. 27, 2008), that court subsequently held class counsel adequate
in approving settlement of that class action.

15

duty is a matter of mere speculation by the Defendants, and not grounds for a finding of inadequacy.

43.    In addition, the Defendants suggest that class counsel are inadequate to represent the interests of the *Walker* class because Mr. Yanchunis, of the Hoyer law firm, has engaged in the unauthorized practice of law. In this instance, Defendants did file a grievance with the Texas State Bar Unauthorized Practice of Law Committee. Based on conversation with Mr. Yanchunis, I am apprised that he has cured the defect that led to his suspension (namely, failure to pay bar dues and to meet Texas CLE requirements); that he has retained counsel to represent him before the disciplinary committee; and that he is seeking a private reprimand and resolution of this matter. Mr. Yanchunis explained that his failure to pay dues and meet CLE requirements were the result of administrative oversight at his office. To date, Mr. Yanchunis has not been publicly censured by the Texas State Bar, and his Texas license has been restored to current active status.

44.    This alleged violation of professional responsibility is not the sort to disqualify Mr. Yanchunis or the Hoyer law firm from adequately representing the class. At no time during the prosecution of this litigation have the Plaintiff's attorneys, including Mr. Yanchunis, failed to demonstrate competence or expertise in class action matters, failed to diligently prosecute the action, or failed to obey court orders. Instead, they have vigorously represented the interests of their class clients. In addition, as his resume indicates, over the course of his thirty year legal career, Mr. Yanchunis has been an exemplary attorney who has devoted of hours to service to the Florida State Bar, as well as to his class action and individual clients.

## Alleged Conflicts of Interest

45.    As indicated above, Defendants have intimated that three conflicts of interest render proposed class counsel inadequate to represent the class. Similar to the Defendants' other

16

allegations, these alleged disabling conflicts of interest are merely speculative, or not conflicts of interest at all.

46.    In assessing whether proposed class counsel are adequate, the court must determine whether any conflict of interest exists between class counsel and class members. *See* MANUAL FOR COMPLEX LITIGATION at §§ 21.271, 21.611-21.612. Historically, courts have had difficulty in evaluating the existence of a conflict of interest between counsel and the class, especially at the stage of class certification of a litigation class. *See* 7B Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1769.1 (2d ed. 2005). Consequently, courts rarely find disabling conflicts of interest at the certification stage. The scant case law discussing attorney conflicts of interest focuses on settlement classes, where the course of settlement negotiations or the actual settlement terms make a conflict of interest more readily apparent.[25]

47.    The leading treatise on federal practice and procedure, in discussing conflicts of interest between counsel and class members, observes:

" . . . many of the potential conflict-of-interest problems posed by class actions arise at the settlement stage. Thus, rather than speculating during class certification regarding potential future conflicts that may impede counsel's ability to be an adequate representative, it may be better to focus on how to control the settlement process to ensure that the class members' interests are sufficiently protected."[26]

48.    Thus, the United States Supreme Court has determined that a classic conflict of interest exists where the class representative simultaneously seeks to represent both current and future claimants in a personal injury mass tort class settlement.[27]

---

[25] MANUAL FOR COMPLEX LITIGATION at § 21.612; 7A Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 1769.1 (cited cases); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

[26] 7A Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 1769.1.

[27] *See Ortiz* and *Amchem, id.*

17

49.     The types of class action litigation giving rise to conflict of interest problems fall into a few narrow categories. Certain types of class litigation where the recovery is sizeable, such as antitrust litigation or securities fraud, require heightened assessment relating to class counsel's conflict of interest.[28] In securities cases, class counsel's interest in recovering a large fee may generate a conflict of interest with class members. In recognition of this potential problem, Congress in 1995 enacted a statute that requires a court, where the proposed class counsel directly owns or has a beneficial interest in the securities that are the subject of the litigation, to make a determination whether there is a conflict of interest sufficient to disqualify the attorney from representing the class.[29] The proposed *Walker* is not a securities fraud or antitrust litigation, and no such conflict of interest is present on these facts.

50.     Courts also have found disabling conflicts of interest where the proposed class counsel is the class representative or a member of the class.[30] In this same vein, a few courts have determined that a conflict of interest is present where the class representative is related to or allied with members of class counsels' law firm; hence, the class representative cannot be related to or closely allied to anyone who is in the class firm representing the class.[31] No such disabling conflict of interest is present in the proposed *Walker* litigation.[32]

51.     A third potential type of conflict of interest may be present if class counsel is involved in multiple lawsuits for the named representative or against the same defendants that

---

[28]   7A Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 1769.1.

[29]   *Id.* (cases cited).

[30]   *Id.* (cases cited).

[31]   *Id.* (cases cited).

[32]   The Wright, Miller & Kane treatise also suggests that in some jurisdictions, a conflict may exist if the law firm agrees to advance litigation costs and expenses, although a majority of courts have concluded that such arrangements may be allowed. *See id.* However, Defendants have not raised this as a conflict of interest in this action.

18

could result in conflicting interests in their prosecution.[33]   However, the leading treatise on federal practice and procedure notes: "But the fact that the counsel is engaged in multiple parallel or overlapping class suits does not, standing alone, establish a conflict. The court will look carefully at what is involved in each litigation, and may deem an attorney to be an adequate representative if it determines that no real conflict exists."[34] In addition, where parallel pending litigation exists, a court may mitigate any potential conflict with procedural safeguards to ensure the protection of class members' interests.[35]

52.    As indicated above, Defendants allege that a disqualifying conflict of interest is present in the proposed Texas *Walker* class action because counsel have pleaded inconsistent theories and damages in their Colorado and Texas cases. Under the Federal Rules of Civil Procedure, a party in a single action may plead as many claims or defenses a party has, regardless of consistency. Fed. R. Civ. P. 8(e)(2).[36] That class counsel have pleaded different claims and damages in the Colorado arbitration and the Texas class action is not prohibited under the rules, and does not raise a conflict of interest. Instead, the pleading of different claims and damages in two state-based actions reflects the reality of federalism, and differences in

---

[33] 7A Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE § 17691.

[34] *Id.* (citing cases). *See e.g., Sheftelman v. Jones*, 667 F. Supp. 859 (D. Ga. 1987)("fact that plaintiffs's counsel were also representing other classes against other common defendants in an unrelated class action did not render counsel inadequate for class certification purposes, despite contention that certain defendants in both actions could not satisfy competing judgments in both actions, thus creating conflict of interest, where potential conflicts were speculative, and several procedural safeguards existed to eviscerate any conflict that could arise.").

[35] *Id.* (citing cases).

[36] "A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds."

19

underlying state law. In addition, the pleading of different claims and damages reflects permissible strategic assessments by class counsel on behalf of the class interests.[37]

53.    As indicated above, the fact that class counsel are involved in two separate parallel actions against the same defendants does not create a *per se* conflict of interest that renders class counsel inadequate. Indeed, the fact that the Colorado litigation is proceeding under arbitration auspices, to be resolved by an arbitrator, may provide precisely the type of structural protection of class members' interests that mitigates any suggestion of conflict of interest. In addition, this court, through its supervisory management of the proposed Texas *Walker* class, can provide additional structural assurances of protection for the *Walker* class members' interests.

54.    The Defendants next contend that the proposed class counsel are enmeshed in a disabling conflict of interest by virtue of a free-standing defamation lawsuit that the Defendants have filed against the Plaintiff's counsel. The existence of this lawsuit does not establish a disabling conflict of interest. In class action litigation, the closest analog is the presence of a counterclaim against class plaintiffs. Courts have held that the presence of a counterclaim against class representatives does not render the class representatives inadequate to represent the class.[38] Moreover, in such instances, courts may order a severance of the counterclaim, in order to avoid a counterclaim becoming a distraction to the jury on the class claims.

55.    The independent assertion of a defamation suit against class counsel presents no such potential jury distraction to the prosecution of the *Walker* class claims. I know of no case in

---

[37] Moreover, the designation of Courtland Walker as the proposed class representative for the Texas *Walker* class action, and his withdrawal from the Colorado arbitration, also has no bearing on the adequacy of class counsel, but rather reflects an informed strategic decision by class counsel concerning Walker's pursuit of his Texas-based claims.

[38] *Heartland Comm.v. SPRINT Corp.*, 161 F.R.D. 111, 116-17 (D. Kan. 1995).

which a court has found class counsel to be inadequate by virtue of defendants instituting a retaliatory defamation action against class counsel. Indeed, in the single reported case on point, the court concluded that the presence of an independent defamation suit aligned the class counsel's interest more strongly with the prosecution of the class claims, because successful judgment on the class claims would undermine the separate defamation claims.[39]

56.     Moreover, sound public policy arguments counsel against finding class counsel inadequate by virtue of the existence of a defamation suit instituted against them by Defendants in the class action. If such independent litigation were held to be disqualifying, this would encourage class action Defendants to file retaliatory lawsuits to disarm class counsel from representing the class.

57.     Finally, Defendants have alleged that class counsel's use of various internet and social media forums to advance the class litigation and class interests render class counsel inadequate to represent the class. Again, no court has found class counsel inadequate to represent a class under similar circumstances, and the *Ploog* case cited above, indicates that such actions may instead embody vigorous representation of class interests. Moreover, Hoyer's actions as alleged by the Defendants regarding the Defendants' accreditation also raises no disabling conflict of interest; such actions may be congruent with the litigation goals of the *Walker* class action.

## Conclusion

For the reason stated above, I conclude that the court should assess proposed class counsel pursuant to the four criteria set forth in Fed. R. Civ. P. 23(g)(1)(C), as well common law

---

[39] *Markham v. White*, 1999 WL 1072647 at *4 – 6 (N.D. Ill. Sept. 9, 1999).

standards developed under Fed. R. Civ. P. 23(a)(4), and that pursuant to these standards, proposed class counsel be found adequate to represent the proposed *Walker* class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _3rd_ day of August 2010, at Austin, Texas.

*Linda Susan Mullenix*

Linda Susan Mullenix

22

## EXHIBIT A

## DOCUMENTS AND MATERIALS REVIEWED IN WALKER ET AL. V. ALTA COLLEGES, INC., ET AL., CIVIL ACTION NO, 1:09-CV-894 (W.D. TEXAS, AUSTIN DIVISION)

Plaintiff's Original Petition

Plaintiff's Motion for Class Certification

Plaintiff's First Amended Complaint

Plaintiff's Amended Motion for Class Certification

Motion to Extend Deadline for Filing Response to Motion for Class Certification

Letter from Barry F. McNeil to LeLand C. de la Garza, Chairperson, State Bar of Texas Unauthorized Practice of Law Committee (February 9, 2010)

Defendants' Motion to Compel

Defendants' Opposition to Plaintiffs' Motion to Quash or Modify Subpoenas for the Depositions

of Jessica Mackenzie and Laurie Mackenzie

Defendants' Opposition to Plaintiffs' Motion for Protective Order to Limit Scope of Discovery

(Redacted Version – Portions Filed Under Seal)

Defendants' Opening Supplemental Brief on Discovery Issues

Reply in Support of Defendants' Supplemental Brief on Discovery Issues, with Authorities Cited

in Reply I Support of Defendants' Supplemental Brief on Discovery Issues

Transcript of Oral Deposition of Courtland Walker (April 21, 2010)

Objections and Responses of Wesgray Corporation to Plaintiff's Second Set of Interrogatories

Expert Opinion of W. Amon Burton (July 30, 2010)

Chart Documenting Westwood's Attacks on Plaintiffs or Plaintiff's Counsel's Adequacy

MANUAL FOR COMPLEX LITIGATION, FOURTH (Federal Judicial Center 2004)

Federal cases discussing adequacy of class counsel

Robert H. Klonoff, Edward K.M. Bilich, and Suzette M. Malveaux, CLASS ACTIONS AND OTHER MULTI-PARTY LITIGATION: CASES AND MATERIALS (2d ed. 2006)
Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE Vols. 7A and 7B

Federal Rule of Civil Procedure 23